FRANCES ELLEN JAMES, an Infant, by FRANCIS H. JAMES, Her Guardian ad Litem, Respondent, *v.* DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Defendant, Impleaded with TOWN OF CORTLANDVILLE and Another, Appellants.

Third Department, November 18, 1931.

618

*Charles H. Gardner,* for the appellant county of Cortland.

*Levi R. Chase,* for the appellant town of Cortlandville.

*Quinn, Higgins & Tormey* [*James C. Tormey* of counsel], for the respondent.

WHITMYER, J. The case was submitted as one of negligence, without objection and exception. The complaint was dismissed as to the railroad company and there is no appeal from that. The verdict was rendered against the county and the town and both are appealing, each on the ground that the negligence, which is conceded, is chargeable against the other, or the State, or the other and the State. It is not claimed that there was contributory negligence on plaintiff's part.

On September 26, 1929, at about ten-fifteen P. M., while walking in a southerly direction on the easterly side of the bridge over the railroad company's tracks, on the Syracuse-Cortland State highway, in the town of Cortlandville, between Homer and Cortland, plaintiff fell a distance of twenty-seven feet to the tracks below, through an opening in the bridge, caused by the lack of a railing on the easterly side of the bridge, and was seriously injured.

The bridge had been built by the railroad company, pursuant to an order of the Public Service Commission, dated June 17, 1920, upon a petition filed with the former Board of Railroad Commissioners.

On each side there was a girder, about sixteen and one-quarter inches high, with an iron railing, two and one-half feet high, on each girder.

On November 29, 1927, the board of supervisors of the county adopted a resolution for the removal of snow from this highway, including the roadway over the bridge.

Thereupon and during January, February and March, 1929, the county removed the snow from the bridge and its approaches, under the direction of the county superintendent of highways.

One morning in February, 1929, the county snow plow hit the railing on the easterly side and a piece at the northerly end was broken.

The railing was bent over in the middle.

Shortly thereafter the conductor of a passing trolley car pushed it back.

In March, 1929, the county superintendent found the entire railing on the floor of the bridge and removed it to the county garage nearby.

On or about July 6, 1929, about one-half of it was replaced by a county employee, who left the gap in the middle, through which plaintiff fell. And the county superintendent of highways knew about the situation.

The lack of the railing in the middle of the girder was the proximate cause of the accident.

The County Law (§ 6, as added by Laws of 1917, chap. 578) provides: " When, by law, a county has charge of the repair or maintenance of a road, highway, bridge or culvert, the county shall be liable for injuries to person or property sustained in consequence of such road, highway, bridge or culvert being defective, out of repair, unsafe, dangerous or obstructed (sic) existing because of the negligence of the county, its officers, agents or servants."

And the Highway Law (§ 53-a, added by Laws of 1922, chap. 110, as amd. by Laws of 1926, chap. 491, and Laws of 1929, chap. 49) authorizes the board of supervisors of any county to annually appropriate and expend such sum as it deems proper for the removal of snow from the highways of the county, to remove the danger due to ice and snow thereon.

When a county so elects and in consequence undertakes the work of snow removal, it is maintaining the highway to that extent and is required to exercise reasonable care in doing the work.

The railing was bent, when it was struck by the county snow plow, in the work of removing the snow from the roadway over the bridge. Thereafter, when all of it lay on the floor of the bridge, the county superintendent of highways caused it to be removed to the county garage, where it was kept for several months, when it was replaced on the girders by a county workman or by county workmen, who left the gap in the middle, through which plaintiff fell.

The unsafe condition had been created by the county or by persons for whose negligent acts the county was responsible.

And, in remedying or attempting to remedy the condition, the county was required to do the work in a reasonably careful manner to protect persons, lawfully and carefully using the roadway, from

injury by reason of the unsafe condition and, for failure so to do, the county is liable, if such failure was the proximate cause of the accident.

In this case that was a question of fact for the jury.

The question of the liability of the town remains.

The Highway Law (§ 74, as amd. by Laws of 1918, chap. 161) provides that " every town shall be liable for all damages to persons or property sustained by reason of any defect in its highways or bridges, existing because of the neglect of any town superintendent of such town."

And the Railroad Law (§ 93, as amd. by Laws of 1928, chap. 546) provides that " When a highway crosses a railroad by an overhead bridge, the framework of the bridge and its abutments shall be maintained and kept in repair by the railroad corporation, and the roadway thereover and the approaches thereto shall be maintained and kept in repair by the municipality having juris-diction over and in which the same are situated   *   *   *."

The railing was not part of the framework or abutment of the bridge, but of the roadway, and the duty of maintaining it was on the proper municipality.  (*Burchard* v. *Payne*, 197 App. Div. 829; affd., 233 N. Y. 671.)

It was replaced. on or about July 6, 1929, and the accident happened on September 26, 1929.  In addition, there is evidence that the town superintendent knew about the situation.

So that, if there is nothing else, the question of the town super-intendent's negligence would be for the jury.

The Railroad Law (§ 93) provides, further, in the last sentence, that " where the roadway over a railroad, or the subway under-neath the same, or the approaches thereto have been improved by the State as a part of a State or county highway, such roadway or subway, or approaches only, as have been so improved shall thereafter be maintained and kept in repair by the Superintendent of Public Works in the manner provided in the Highway Law for the maintenance and repair of State and county highways."

And the Highway Law (§ 176, as amd. by Laws of 1922, chap. 371) provides that " the State shall not be liable for damages suffered by any person from defects in State and county highways, except between the first day of May and the fifteenth day of November on such highways as are maintained by the State under such system as the Commissioner of Highways | may adopt pursuant to section one hundred and seventy, but the liability for such damages shall otherwise remain as now provided by law."

The effect is that the State is liable for damages suffered by any person for defects in a State and county highway, maintained by the State, occurring between May first and November fifteenth in any year.

This is a State highway. It is within the provisions of section 176 of the Highway Law. And the accident happened during the period of the year when the State was responsible for the maintenance thereof.

So that, notwithstanding the knowledge which the town superintendent had of the situation, the town is not liable for his failure to act.

We think that the judgment should be affirmed as to the county and reversed, with a dismissal of the complaint, as to the town.

All concur.

Judgment as against the county of Cortland unanimously affirmed, with costs.

Judgment as against the town of Cortlandville reversed on the law, with costs, and complaint as against the town of Cortlandville dismissed, with costs.