OPINION OF THE COURT
Arthur W. Lonschein, J.
A unique provision contained in a first mortgage of real property presents a question of first impression for resolution by the court. The plaintiff, holder of a junior mortgage, has brought this action to foreclose. The defendant, holder of the senior first mortgage, moves pursuant to CPLR 3211 to dismiss the complaint and cancel the lis pendens on the ground that the complaint fails to state a cause of action in that the junior mortgage is not in default as alleged.
The plaintiff, DHNH Realty Corp. (DHNH), is the former owner of the premises which is the subject of the foreclosure action and which premises is used to operate a residential facility for the care of the elderly. The defendant, Thrift Association Service Corp. (TASCO), is a cor *693 poration owned by approximately 66 New York savings and loan associations. In accordance with the policy established by its board of directors, TASCO made loans primarily for socially oriented purposes. In 1975, TASCO and nine of its participating savings and loan associations loaned a substantial sum to the plaintiff, DHNH, for the purpose of building and operating an adult home on premises which it owned and DHNH, as owner of the premises, delivered to TASCO as security its bond and mortgage for the amount of the loan. In January, 1978, DHNH was seriously in arrears in the payment of mortgage and in addition, owed more than $250,000 in real estate taxes that it was required to pay. Due to its financial difficulties and to avert an impending foreclosure action by TASCO, DHNH with full knowledge and participation by TASCO sold the premises to the defendant, Marino P. Jeantet Residents for Seniors, Inc. (Jeantet), a not-for-profit corporation, in the hope that Jeantet as a charitable institution would obtain an exemption from real estate taxes. As part of the purchase price, DHNH took back a purchase-money mortgage in the amount of $775,000, subordinate to the mortgage given to secure the original indebtedness to TASCO, which first mortgage Jeantet assumed.
No payments on the purchase-money junior mortgage given by Jeantet to DHNH have been made as required by that mortgage and thus DHNH brings this foreclosure action. The first mortgage originally given by plaintiff TASCO and to which the purchase-money mortgage is subordinate, contains the following- provision: “that no payment, of any type, will be made with respect to any secondary financing unless the mortgage indebtedness secured hereby is current”. The purchase-money mortgage which is subordinate to that first mortgage contains the following provision: “this is a purchase money mortgage given to secure part of the purchase price for the aforementioned premises”.
Plaintiff in bringing this action, of necessity alleges a default in its junior mortgage and acknowledges that its lien is subordinate to the first mortgage of TASCO. TASCO moves to dismiss contending generally that Jeantet, the *694 present owner of the premises cannot be in default of plaintiff’s mortgage, since the mortgage held by TASCO is in default itself and its mortgage, originally given by plaintiff at a time when the plaintiff was the owner of the property, provides that no payments are required to be made with respect to “secondary financing” during the continuance of such default. It further contends that under such a circumstance the present property owner cannot be in default on the mortgage held by plaintiff which it now seeks to foreclose.
The disposition of TASCO’s contentions depends upon the meaning of the term “secondary financing” as written in the provisions of the first mortgage and the nature of a purchase-money mortgage. It is worthy of note that at the time of the closing between DHNH and Jeantet, TASCO, in order to facilitate the closing, increased the obligation due under the first mortgage by advancing additional moneys thereon and despite the fact that the buyer and seller contemplated a deferred payment of the purchase price by the giving of a purchase-money mortgage to DHNH, TASCO took no steps to further define the term “secondary financing”.
In construing this agreement, it is axiomatic that should there be any ambiguity in the construction of the term “secondary financing”, the ambiguity should be construed strictly against the draftsman of the agreement, in this case TASCO. (Chase Manhattan Bank, N. A. v Mehlman, 59 AD2d 694; James Berardi, Inc. v Callanan Inds., 63 AD2d 804; Rentways, Inc. v O’Neill Milk & Cream Co., 308 NY 342, 348.) Absent further description, the court can only conclude that the term “financing” or “secondary financing” as stated in the first mortgage relates to the borrowing of money or the receipt of credit for some purpose, the repayment of which would be secured by a mortgage. There is nothing in the papers to suggest that the plaintiff while in possession as owner, borrowed additional moneys and gave as security therefor any subordinate mortgages.
Absent anything to the contrary, it is reasonable to conclude that at the time the first mortgage was executed, the parties to that mortgage, because of the circumstances in *695 which it was given, meant by the term “secondary financing” that if the mortgagor in futuro borrowed money and created an additional lien upon the real property by the execution of a subordinate mortgage, a potential lender would be on notice that he stood behind TASCO not only after foreclosure, but that during the life of the first mortgage he was not entitled to payment if the first mortgage were in arrears.
A purchase-money mortgage does not relate to the borrowing of money, however. It is by the weight of authority not a loan. (Mandelino v Fribourg, 23 NY2d 145.) The traditionally accepted legal concepts of such a mortgage is found in Wiltsie, Mortgage Foreclosure (4th ed, vol 1, § 271, p 377), “ ‘A purchase-money mortgage on land is a mortgage executed at the time of the purchase of the land and contemporaneously with the acquirement of the legal title or afterwards, but as a part of the same transaction to secure an unpaid balance of the purchase price’ ” (Syracuse Sav. & Loan Assn. v Hass, 134 Misc 82, 85).
The effect of a purchase-money mortgage therefore is merely a method by which the purchase price is paid, the deferred payment thereof being secured by a mortgage. The court in Frank v Davis (53 Hun 636, opn in 6 NYS 144, affd 127 NY 673) held that in the case of a purchase-money mortgage which calls for the payment of principal and interest computed from a date prior to the execution of the mortgage, is a transaction that is not a loan nor forbearance with respect to a pre-existing debt, but a means of increasing the purchase price.
In view of the foregoing, the purchase-money mortgage is not and cannot be “secondary financing” within the meaning of the terms of the first mortgage. The motion by the defendant TASCO is therefore denied and it has 20 days to interpose its answer after being served with a copy of the order to be entered herein.